UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

FUND-EQ, JCA, LLC, a series of FORGE
INVESTMENTS, LLC, f/k/a EQUIDATE
INVESTMENTS, LLC; FUND EQ-RRA, LLC,
a series of FORGE INVESTMENTS, LLC,
f/k/a EQUIDATE INVESTMENTS, LLC;
and FUND EQ-RGH, LLC, a series of FORGE
INVESTMENTS, LLC, f/k/a EQUIDATE
INVESTMENTS, LLC.

       Plaintiffs,

v.

JULIAN TARGOWSKI,

       Defendant.
_____/

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiffs, FUND-EQ, JCA, LLC, a series of FORGE INVESTMENTS, LLC, f/k/a EQUIDATE INVESTMENTS, LLC; FUND EQ-RRA, LLC, a series of FORGE INVESTMENTS, LLC, f/k/a EQUIDATE INVESTMENTS, LLC; and FUND EQ-RGH, LLC, a series of FORGE INVESTMENTS, LLC, f/k/a EQUIDATE INVESTMENTS, LLC (collectively "Forge"), by and through their undersigned counsel, hereby sue Defendant, JULIAN TARGOWSKI ("Defendant"), and for their cause of action, declare and aver as follows:

**NATURE OF THIS ACTION**

1.      This case involves a "forward contract," a unique agreement whereby a shareholder of a restricted, non-publicly trading stock[1] can immediately monetize those shares rather than having to wait until the shares trade publicly.  Under the terms of a forward contract, in consideration of the receipt of cash *now*, the shareholder agrees to deliver his or her restricted shares at some time in the future, *i.e.*, if and when the shares become publicly traded (typically as a result of the issuer engaging in an initial public offer).  Forge acts as an intermediary or middleman to the "forward contract." The cash at closing that is paid the selling shareholder is provided to Forge by a separate buyer (or buyers) who, through a separate agreement(s) with Forge, contracts to receive the previously restricted shares once the previously restricted shares become freely tradable.

2.      In 2017, Defendant entered into a series of four such "forward contracts" with Forge pursuant to which he received roughly $1,200,000 in exchange for his promise to deliver a total of 29,030 shares of Airbnb, Inc. if and when those shares became freely tradable following an anticipated initial public offering of Airbnb, Inc. (collectively, the "Forward Contracts").

3.      At the same time Defendant entered into the Forward Contracts with Forge, Forge entered into separate agreement(s) to provide a total of 29,030 shares of Airbnb, Inc. to numerous buyers if and when those Airbnb shares became freely tradable.

---

[1]     Privately held companies, like Airbnb, place restrictions upon their shares that generally prevent a shareholder from transferring and/or selling his or her shares until 180 days after the private company goes public.

4.  On May 17, 2021, those 29,030 Airbnb shares did, in fact, become freely tradable and, therefore, Defendant owed them, in kind, to Forge, and Forge, in turn, then owed those shares to the buyers.

5.  To date, however, Defendant has outright refused to provide the 29,030 Airbnb shares to Forge. The Forward Contracts demand specific performance – that Defendant transfer the 29,030 Airbnb shares.

6.  Forge seeks a preliminary injunction to preclude Defendant from selling 29,030 Airbnb shares, rather than delivering them to Forge under the terms of the Forward Contracts.[2] Pursuant to the terms of the Forward Contracts, Defendant promised to provide the shares to Forge in-kind.

7.  In addition, in the event that Defendant has already sold some or all of the 29,030 Airbnb shares, he should be enjoined from using the proceeds of those sales for anything other than satisfying his obligations to Forge under the Forward Contracts.

## PARTIES

8.  Equidate Investments, LLC was a Delaware series limited liability company[3] whose principal place of business was in San Francisco, California. In January 2019, Equidate Investments, LLC rebranded itself and changed its name to Forge Investments, LLC. At all times alleged herein, Forge is and has been a Delaware series limited liability

---

[2] The Forward Contracts contain a mandatory arbitration provision; however, the provision entitles Plaintiff to file this action for a preliminary injunction. *See* Forward Contracts, Annex I §5.12 (entitling Plaintiff to seek "court application for a preliminary remedy").

[3] A series limited liability company allows for unlimited segregation of membership interests, assets, and operations into independent series. Each series operates like a separate entity with a unique name, bank account, and separate books and records. A series LLC may have different members and managers in each series. The rights and obligations of these members and managers differ from series to series. Each series may enter into contracts, sue, or be sued, and hold title to real and personal property.

company with its principal place of business in San Francisco, California. As a series limited liability company, Forge has several Funds or series limited liability companies that are affiliated with it, including Fund EQ-JCA, LLC, Fund EQ-RRA, LLC, and Fund EQ-RGH, LLC (collectively the "Funds"). The Funds are all Delaware limited liability companies that are series or funds of Forge, with their principal place of business in San Francisco, California.

9. Forge creates a series of funds to act as the intermediary investment vehicle for these forward transactions. Each Forge fund is created for a certain tranche of restricted shares in a privately held company – *i.e.*, "target shares" – once those shares are matched with buyer(s). The buyer(s) transfer(s) the agreed upon money to the particular Forge fund in exchange for the future right to obtain an agreed upon number of "target shares" if and when those shares become freely tradable. At the time the buyers transfer their money into the Forge fund, they receive shares of that Forge fund. At the time the "target shares" of the privately held company become freely tradable, Forge must collect the shares from the seller and then provide them pro rata to the Forge fund buyers.

10. Upon information and belief, Defendant is a citizen of the State of Florida, currently residing in Miami-Dade County, Florida.

**JURISDICTION**

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Specifically, Forge, a Delaware limited liability company with its principal place of business in California, seeks from Defendant, a Florida resident, 29,030 shares of Airbnb,

4

which, as of the time of this filing, are trading at or around $145.49; thus, the amount in controversy is approximately $4,223,574.70, exclusive of costs and attorneys' fees.

12. This Court has personal jurisdiction over Defendant because he resides within this judicial district.

13. Venue is proper in this Court because Defendant resides in this judicial district.

## FACTUAL BACKGROUND

14. Generally speaking, the owners of shares of private companies are restricted from selling their shares in the open market.  Thus, even if they want to sell their shares, and even if there are people willing to buy those shares, there is no ready means of accommodating the sellers and buyers.

15. Moreover, regardless of the perceived value of those shares, shareholders often have no way to monetize them until the shares become publicly traded, since they are restricted from selling them by the issuer until that occurs.

16. The private shares of those companies that are anticipated to undergo an initial public offering in a relatively short period of time are of particular interest to prospective buyers, given that the share prices sometimes increase following an IPO.

17. Forge devised a way – the forward contract – to assist shareholders of private companies who want to immediately monetize their restricted shares, and people who are interested in acquiring those shares in anticipation of an IPO.

18. When Forge is approached by someone interested in acquiring the private shares of a particular company, Forge then attempts to locate owners of those shares who might be willing to enter into a forward contract.

19. Here, in response to a demand from buyers, Forge identified Defendant as the owner of private shares of Airbnb, a company that, at the time, was anticipated to undergo an IPO. Forge contacted Defendant and informed him of the existence of buyers willing to pay cash – now – in exchange for his contractual promise to deliver those shares if and when the IPO actually happened, and his shares became freely trading.

20. Defendant agreed to sell some of his Airbnb shares. Specifically, Defendant entered into four separate forward contracts (formally called "Master Securities Forward Transaction Contracts") with Forge in 2017.

21. On or about January 16, 2017, Defendant entered into his first Master Securities Forward Transaction Contract (the "First Forward Contract") with Fund EQ-JCA, LLC, a true and correct copy of which is attached hereto as Exhibit "A" and incorporated herein by reference.

22. On or around January 16, 2017, pursuant to the terms of the First Forward Contract, Defendant received $466,272 from Fund EQ-JCA, LLC.

23. In exchange for the $466,272 Defendant received on or about January 16, 2017, Defendant promised to deliver the equivalent[4] of 6,000 Airbnb shares to Fund EQ-JCA, LLC upon such time as the Airbnb shares become freely tradable, either at the expiration of the lock-up period after Airbnb went public, or otherwise.

24. Shortly thereafter, on or about February 22, 2017, Defendant entered into a second Master Securities Forward Transaction Contract (the "Second Forward

---

[4] As set forth below, if Airbnb modified the number of its outstanding shares either through a stock split or reverse stock split, Defendant had to adjust the number of shares he had to deliver in order to maintain parity in the transaction.

6

Contract") with Fund EQ-JCA, LLC, a true and correct copy of which is attached hereto as Exhibit "B" and incorporated herein by reference.

25. On or around February 22, 2017, pursuant to the terms of the Second Forward Contract, Defendant received $80,908.80 from Fund EQ-JCA, LLC.

26. In exchange for the $80,908.80 Defendant received on or about February 22, 2017, Defendant promised to deliver the equivalent of 1,000 Airbnb shares to Fund EQ-JCA, LLC, upon such time as the Airbnb shares become freely tradable, either at the expiration of the lock-up period after Airbnb went public, or otherwise.

27. On or about February 23, 2017, Defendant entered into a third Master Securities Forward Transaction Contract (the "Third Forward Contract") with Fund EQ-RGH, LLC, a true and correct copy of which is attached hereto as Exhibit "C" and incorporated herein by reference.

28. On or around February 23, 2017, pursuant to the term of the Third Forward Contract, Defendant received $581,568 from Fund EQ-RGH, LLC.

29. As consideration for the $581,568 Defendant received on or about February 23, 2017, Defendant promised to deliver the equivalent of 6,500 Airbnb shares to Fund EQ-RGH, LLC, upon such time as the Airbnb shares become freely tradable, either at the expiration of the lock-up period after Airbnb went public, or otherwise.

30. On or about September 20, 2017, Defendant entered into a fourth Master Securities Forward Transaction Contract (the "Fourth Forward Contract") with Fund EQ-RRA, LLC, a true and correct copy of which is attached hereto as Exhibit "D" and incorporated herein by reference.

31. On or around September 20, 2017, pursuant to the terms of the Fourth Forward Contract, Defendant received $97,471.67 from Fund EQ-RRA, LLC.

32. As consideration for the $97,471.67 Defendant received on or about September 20, 2017, Defendant promised to deliver the equivalent of 1,015 Airbnb shares to Fund EQ-RRA, LLC, upon such time as the Airbnb shares become freely tradable, either at the expiration of the lock-up period after Airbnb went public, or otherwise.

33. In sum, Defendant received more than $1,200,000 in 2017 for a future promise to deliver his Airbnb shares, at a then unknown time, to Forge for the compensation that Defendant received.

34. Defendant agreed to provide the Airbnb shares to Forge pursuant to the Forward Contracts at a later time, rather than upon receipt of the funds, because Defendant's Airbnb shares contained certain transfer restrictions that prevented Defendant from freely trading and/or transferring the shares at that time.

35. The transfer restrictions on the Airbnb shares would expire after Airbnb went public and the 180-day lock-up period expired.[5]

36. As indicated above, if between the date of the transaction in 2017, and the date when the Airbnb shares became transferable, there was an event such as a stock split or reverse stock split, which impacted Defendant's Airbnb shares, Defendant was required to modify the number of shares he was required to transfer to Forge in order to maintain parity.

---

[5] When a privately held company goes public, the previously restricted shares become freely tradable on the public market after the expiration of a lock-up period. The lock-up period is a set amount of time, generally 90 to 180 days after the IPO, during which time shareholders of restricted shares are prevented from selling their shares on the public stock market. After the expiration of the lock-up period, the previously restricted shares of Airbnb lose their restrictions and become freely tradable to the public.

8

37. The Forward Contracts were designed, in this way, to mimic a normal stock sale transaction.

38. On or about October 27, 2020, Airbnb's shares were subject to a 2:1 stock split and the number of Airbnb shares that Defendant owned doubled.

39. As a result of the October 27, 2020 Airbnb stock split, and pursuant to the Forward Contracts, the number of shares that Defendant was required to provide to the Funds doubled from 14,515 to 29,030 shares at the time those shares became transferrable.

40. On November 16, 2020, Airbnb, Inc. initiated the process to go public and be listed on the NASDAQ stock exchange by filing its S-1 with the Securities and Exchange Commission. *See* https://www.sec.gov/Archives/edgar/data/1559720/000119312520294801/d81668ds1.htm

41. For Airbnb, the restricted shares became freely tradable 180 days after the initial S-1 was filed with the SEC on November 16, 2020.

42. On May 17, 2021, Defendant's Airbnb shares became freely trading when the 180 day lock-up period expired.

43. On or about May 18, 2021, Forge communicated with Defendant and informed him that, pursuant to all the Forward Contracts, his shares were due for delivery.

44. Again on June 1, 2021, Forge communicated with Defendant reminding him of his obligations to provide his Airbnb shares. The metadata confirms that the email was reviewed by Defendant at least three separate times on three separate days (June 2, June 9, and July 8, 2021).

45. There were at least five other email and phone attempts by Forge to contact Defendant during this time regarding the outstanding shares that were owed.

46. On June 29, June 30, and July 2, 2021, Forge sent additional emails to Defendant, all of which demanded that Defendant transfer his Airbnb shares to Forge pursuant to the Forward Contracts. None of the emails bounced back or otherwise indicated they were not delivered.

47. In addition to the email and telephone attempts in May and June, Forge corresponded with Defendant via Instagram direct messages on July 5, 2021, again informing him that he owed Airbnb shares.

48. On July 7, 2021, having receiving no response to the July 5 Instagram direct message, Forge posted a comment on one of Defendant's Instagram posts and attempted to communicate with Defendant via a LinkedIn direct message.

49. During the week of July 12, 2021, Forge posted more than one dozen comments on Defendant's Instagram posts requesting that Defendant contact Forge.

50. Defendant obviously received and reviewed the Instagram comments and direct messages because he replied to a comment on one of his posts indicating that he "liked" it.

51. Forge sent an additional email to Defendant on and July 28, 2021, all of which demanded that Defendant transfer his Airbnb shares to Forge pursuant to the Forward Contracts.

52. To date, Defendant has ignored Forge's repeated correspondence demanding transfer of the shares.

53. To date, Defendant has refused to provide the 29,030 Airbnb shares that he owes to Forge.

54. The Forward Contracts call for specific performance requiring that the Airbnb shares actually be delivered. Specifically, each of the Forward Contracts provides:

> Specific Performance. The parties agree that any breach of the Contract, particularly with respect to transfers of stock, may cause significant harm, the magnitude of which may be difficult to ascertain, and for which the award of monetary damages may be inadequate to compensate. Therefore, in addition to any and all other remedies that may be available at law or in equity in the event of any breach of the Contract by either party, **the non-breaching party is entitled to specific performance** of the covenants and obligations of the other, and such other injunctive or other equitable relief as may be granted by any court or arbitrating body, with respect to transfers of stock, without the necessity to post a bond. Any arbitration judgment or injunction may be entered in and enforced by any court having jurisdiction under the Contract.

*See* Exhibits "A" – "D", Annex I §5.13.

55. Defendant has no just reason to refuse to transfer the 29,030 Airbnb shares to Forge.

56. Section 5.13 of the Forward Contracts provide that Defendant's refusal to transfer stock "cause[s] significant harm, the magnitude of which may be difficult to ascertain, and for which the award of money damages may be inadequate to compensate." *Id.*

57. Money damages alone are inadequate to fully compensate Forge because Forge, as the middleman, is required to transfer 29,030 Airbnb shares to the buyers on the other side of the forward transactions.

58. Forge will suffer reputational damages if Defendant fails to transfer 29,030 Airbnb Shares to Plaintiffs.

59. All conditions precedent to the maintenance and filing of this cause of action have occurred, have been waived or have been performed.

60. Plaintiffs have retained undersigned counsel to pursue their claim against Defendant and are obligated to pay their counsel a reasonable fee for services rendered in connection with this dispute.

## COUNT I – ACTION FOR INJUNCTIVE RELIEF

61. Forge reavers and re-alleges all allegations contained paragraphs 1 through 60 above as if fully set forth herein.

62. Upon information and belief, Defendant is in possession of at least 29,030 Airbnb shares.

63. Defendant contractually obligated himself to provide those shares to Forge.

64. Defendant has yet to provide those shares and has ignored Forge's 10+ attempts to obtain the Airbnb shares.

65. At least 29,030 of Defendant's Airbnb shares should be transferred into the possession of Forge pursuant to the Forward Contracts.

66. Forge will suffer immediate and irreparable harm if Defendant refuses to provide at least 29,030 Airbnb shares to Forge as Forge is required, in turn, to provide those shares to the buyers.

67. Moreover, Defendant agreed and acknowledged that his failure to transfer the stock may cause significant harm to Plaintiff, the magnitude of which may be difficult to ascertain, and for which the award of monetary damages may be inadequate to compensate.

68. As such, Defendant stipulated that Plaintiff is entitled to specific performance of the Forward Contracts and injunctive relief attendant thereto, without the necessity to post a bond.

69. Forge has a likelihood of success on the merits. Forge has four binding contracts – the Forward Contracts – with Defendant. More than 30 days have passed since Forge made its demand upon Defendant for the transfer of 29,030 Airbnb shares. Defendant has refused to provide those shares. Despite reviewing the correspondence, Defendant has refused to respond to Forge and has refused to provide the 29,030 Airbnb shares.

70. The Forward Contracts all require specific performance, and as explained above, there is no adequate remedy at law.

71. Simply providing cash to Forge will not adequately compensate Forge as the value of the Airbnb shares can rapidly fluctuate throughout a single trading day.

72. Forge has reason to believe that when Defendant receives notice he will liquidate his Airbnb shares making the required in-kind transfer of Airbnb shares impossible.

73. Defendant's failure to perform under the four forward contracts has caused, and continues to cause, significant damage to Forge's reputation and is impacting Forge's relationship with its customers.

74. A temporary and permanent injunction will serve the public interest.

75. Forge is entitled to affirmative injunctive relief requiring Defendant to transfer 29,030 of his Airbnb shares to Forge to allow Forge to satisfy its obligations to the buyers.

76. At a minimum, Defendant should be prohibited from selling or otherwise encumbering his Airbnb shares pending a final determination in this matter and any related arbitration proceeding.

## PRAYER FOR RELIEF

WHEREFORE, FUND-EQ, JCA, LLC, a series of FORGE INVESTMENTS, LLC, f/k/a EQUIDATE INVESTMENTS, LLC; FUND EQ-RRA, LLC, a series of FORGE INVESTMENTS, LLC, f/k/a EQUIDATE INVESTMENTS, LLC; and FUND EQ-RGH, LLC, a series of FORGE INVESTMENTS, LLC, f/k/a EQUIDATE INVESTMENTS, LLC respectfully requests that this Court enter an Order:

A. Declaring that 29,030 of Airbnb shares currently in Defendant's possession shall be transferred in name to that of Forge Investments, LLC;

B. Preliminarily and permanently enjoining Defendant from liquidating, selling, or otherwise transferring any Airbnb shares in his possession without requiring Forge to post a bond;[6]

C. Awarding Forge its attorneys' fees and costs of this suit pursuant to the Forward Contracts; and

D. Granting such other relief as this Court deems just and proper.

Dated: August 6, 2021  
Boca Raton, FL

Respectfully submitted,

*s/ Robin I. Frank*  
ROBIN I. FRANK, ESQ.  
Florida Bar No. 0649619  
E-Mail: rfrank@sbwh.law  
ANDREW B. BLASI, ESQ.  
Florida Bar No. 370983  
E-Mail: ablasi@sbwh.law  
JAMES T. FERRARA, ESQ.

---

[6] As noted above, the Forge Forward Contracts specifically state Forge does not need to post a bond. *See* Forge Forward Contracts, Annex I §5.13

14

>Florida Bar No. 764825
>E-Mail: jferrara@sbwh.law
>STUART A. WEINSTEIN, ESQ.
>Florida Bar No. 526630
>E-Mail: sweinstein@sbwh.law
>SHAPIRO, BLASI, WASSERMAN
>  & HERMANN, P.A.
>7777 Glades Road, Suite 400
>Boca Raton, FL 33434
>Telephone: (561) 477-7800
>Facsimile: (561) 477-7722
>Counsel for Plaintiffs

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I hereby declare, under the penalty of perjury, that I have read the foregoing Complaint, including Count I, and the facts alleged therein are true and correct.

FUND EQ-JCA, LLC, a series of FORGE
INVESTMENTS, LLC, f/k/a EQUIDATE
INVESTMENTS, LLC

By: ___ *Christopher Setaro* _____

Its: Chief Compliance Officer of Forge Global Advisors, LLC, registered advisor of Forge Investments, a series LLC

Dated: __Aug 6, 2021_____

FUND EQ-RRA, LLC, a series of FORGE
INVESTMENTS, LLC, f/k/a EQUIDATE
INVESTMENTS, LLC

By: __ *Christopher Setaro* _____

Its: Chief Compliance Officer of Forge Global Advisors, LLC, registered advisor of Forge Investments, a series LLC

Dated: __Aug 6, 2021_____

FUND EQ-RGH, LLC, a series of FORGE
INVESTMENTS, LLC, f/k/a EQUIDATE
INVESTMENTS, LLC

By: _ *Christopher Setaro* _____

Its: Chief Compliance Officer of Forge Global Advisors, LLC, registered advisor of Forge Investments, a series LLC

Dated: __Aug 6, 2021_____